RITA M. HAEUSLER, State Bar No. 110574
haeusler@hugheshubbard.com
GAURAV REDDY, State Bar No. 259496
reddy@hugheshubbard.com
HUGHES HUBBARD & REED LLP
350 South Grand Avenue, 36th Floor
Los Angeles, California  90071
Telephone:  (213) 613-2800
Facsimile:  (213) 613-2950

JOHN TOWNSEND, admitted *pro hac vice*
townsend@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, DC  20006-2401
Telephone:  (202) 721-4600
Facsimile:  (202) 721-4646

Attorneys for Defendant
S.P. Korolev Rocket and Space Corporation,
Energia D/B/A Rocket and Space Corporation
Energia After S.P. Korolev

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOEING COMPANY and BOEING COMMERCIAL SPACE COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>KB YUZHNOYE; PO YUZHNOYE MASHINOSTROITELNY ZAVOD; S.P. KOROLEV ROCKET AND SPACE CORPORATION, ENERGIA D/B/A ROCKET AND SPACE CORPORATION ENERGIA AFTER | CASE NO. CV 13-00730-ABC (AJWx)<br><br>[Assigned to the Hon. Audrey B. Collins]<br><br>**NOTICE OF MOTION AND MOTION (1) TO DISMISS OR STAY FOR *FORUM NON CONVENIENS* AS TO THE CLAIMS FOR BREACH OF THE ENERGIA GUARANTEE, (2) TO STAY THIS ACTION UNDER THE *COLORADO RIVER* DOCTRINE AS TO THE CLAIMS FOR BREACH OF THE CREATION** |

1
2  S.P. KOROLEV; ENERGIA
   OVERSEAS LLC; and ENERGIA
3  LOGISTICS LTD.,

4          Defendants.

5

6

7

8

9

10

| | AGREEMENT, AND (3) TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION (FRCP 12(b)(1)) |
|---|---|

**(Declarations of Vyacheslav Vasilievich Vasiliev; Kaj Hobér; Rita M. Haeusler; and [Proposed] Order Filed Concurrently Herewith)**

Complaint Filed:  February 1, 2013

Hearing:  June 3, 2013
Time:  10:00 a.m.
Courtroom:  680

11

12     TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

13     PLEASE TAKE NOTICE that on June 3, 2013 at 10:00 a.m., or as soon

14  thereafter as the matter may be heard in the above-entitled court, located at 255 East

15  Temple Street, Los Angeles, CA 90012, Defendant S.P. Korolev Rocket and Space

16  Corporation, Energia D/B/A Rocket and Space Corporation Energia After S.P.

17  Korolev ("RSC Energia") will move the court (1) to dismiss or stay as to the claims

18  for breach of the Energia Guarantee for *forum non conveniens,* (2) to stay the

19  claims for breach of the Creation Agreement under the *Colorado River* doctrine,

20  and (3) to dismiss this action for lack of subject-matter jurisdiction pursuant to Fed.

21  R. Civ. P. 12(b)(1).

22     This motion is made on the grounds that Plaintiffs' Complaint fails to

23  sufficiently articulate facts or cognizable theories supporting this Court's exercise

24  of subject-matter jurisdiction over RSC Energia, and further fails to establish that

25  California is the proper venue for the resolution of the instant dispute.  The motion

26  will be based on this Notice of Motion and Motion, the Memorandum of Points and

27  Authorities filed herewith, and the pleadings and papers filed herein.

28

1    This motion is made following the conference of counsel pursuant to C.D.

2    Cal. L.R. 7-3, which took place on March 22, 2013.

3

4    DATED:  March 27, 2013          JOHN TOWNSEND
                                     RITA M. HAEUSLER
5                                    GAURAV REDDY
                                     HUGHES HUBBARD & REED LLP
6

7

8                                    By:   /s/ Rita M. Haeusler

9                                          Rita M. Haeusler
                                     Attorneys for Defendant S.P. Korolev
10                                   Rocket and Space Corporation, Energia,
                                     D/B/A Rocket and Space Corporation
11                                   Energia After S.P. Korolev

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   BACKGROUND ..................................................................................... 1

   A.   RSC Energia. ................................................................................. 2

   B.   RSC Energia's Involvement in Sea Launch. ................................. 2

   C.   The Swedish Arbitration and Appeal Proceedings. ..................... 6

   D.   Plaintiff BCSC Is Not Registered to Do Business in California. ........... 8

II.  ARGUMENT ........................................................................................ 8

   A.   Plaintiffs' Claims for Breach of the Energia Guarantee Should be Dismissed or Stayed for Forum Non Conveniens. ........................... 9

      1.   The United Kingdom Provides an Adequate Alternative Forum for Resolution of Plaintiffs' Claims for Breach of the Energia Guarantee. ........................................................ 9

      2.   Private and Public Factors Weigh Heavily in Favor of Adjudicating Plaintiffs' Claim for Breach of the Energia Guarantee in the United Kingdom. ........................................ 12

         a.   The Private Factors Favor Adjudicating Plaintiffs' Claims in the United Kingdom. ........................................ 12

            i.   The United Kingdom is a More Convenient Forum. .................................................................. 13

            ii.   The Parties Have Specifically Agreed that the United Kingdom is a Proper and Convenient Forum for Their Disputes. ................. 14

            iii.   Plaintiffs May Argue That RSC Energia Is Precluded from Raising Cross Claims Against Plaintiffs in the United States. ................. 15

         b.   The Public Factors Also Favor Adjudicating Plaintiffs' Claims in the United Kingdom. ...................... 16

            i.   The Fact that U.K. Law Will Govern Some, if Not All, of Plaintiffs' Claims Supports Dismissal of the Claim for Breach of the Energia Guarantee. ............................................. 16

            ii.   The United Kingdom Has the Greater Interest in Resolving this Dispute. ....................... 17

            iii.   California Should Not Be Unduly Burdened with Adjudicating this Matter. ............................. 17

B.  Plaintiffs' Claims for Breach of the Creation Agreement Should be Stayed Under the Colorado River Doctrine, As Doing So Will Serve the Interests of Wise Judicial Administration................... 18

1.  The Swedish Arbitration and the Claims in this Action for Breach of the Creation Agreement Are Sufficiently Similar to Justify Staying this Action........................................ 19

2.  The Colorado River Factors Weigh in Favor of Staying or Dismissing the Claims for Breach of the Creation Agreement Pending Decision of the Appeal in Sweden. .......... 20

C.  This Court Lacks Subject-Matter Jurisdiction Over RSC Energia Under Rule 12(b)(1)........................................................... 21

III.  CONCLUSION ........................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Merck & Co.,*
   353 Fed. App'x 960 (5th Cir. 2009) ................................................................. 11

*Baumgart v. Fairchild Aircraft Corp.,*
   981 F.2d 824 (5th Cir. 1993) ......................................................................... 17

*BCCI Holdings (Luxembourg), Societe Anonyme v. Mahfouz,*
   828 F. Supp. 92 (D.D.C. 1993) ...................................................................... 15

*Beekmans v. J.P. Morgan & Co.,*
   945 F. Supp. 90 (S.D.N.Y. 1996) .................................................................. 14

*Benson v. Crest Energy, Inc.,*
   No. CIV. S-04 1249 FCD EFB, 2007 WL 1080394 (E.D. Cal. April 5,
   2007) ............................................................................................................ 8

*Bolter v. Superior Court,*
   87 Cal. App. 4th 900 (2001) ........................................................................ 10

*Ceramic Corp. of Am. v. Inka Mar. Corp. Inc.,*
   1 F.3d 947 (9th Cir. 1993) ............................................................................. 9

*Colorado River Water Conserv. Dist. v. United States,*
   424 U.S. 800 (1976) ............................................................................. *passim*

*Comb v. PayPal, Inc.,*
   218 F. Supp. 2d 1165 (N.D. Cal. 2002) ........................................................ 10

*Commodity Trend Serv. v. Commodity Futures Trading Comm'n,*
   149 F.3d 679 (7th Cir. 1998) ....................................................................... 22

*Contact Lumber Co. v. P.T. Moges Shipping Co., Ltd.,*
   918 F.2d 1446 (9th Cir. 1990) .................................................................. 9, 11

*In re Countrywide Fin. Corp. Derivative Litig.,*
   542 F. Supp. 2d 1160 (C.D. Cal. 2008) ........................................................ 19

*Creative Tech., Ltd. v. Aztech Sys. Pte, Ltd.,*
   61 F.3d 696 (9th Cir. 1995) .................................................................. 12, 16

*Cruz v. Maritime Co. of Philippines,*
    549 F. Supp. 285 (S.D.N.Y. 1982), aff'd 702 F.2d 47 (2d Cir. 1983) ............... 17

*Dahl v. United Tech. Corp.,*
    632 F.2d 1027 (3d Cir. 1980) ........................................................................ 17

*El Centro Foods, Inc. v. Nazarian,*
    No. CV09-06395 ODW, 2010 WL 1710286 (C.D. Cal. Apr. 21, 2010) ..... 19, 21

*Enfission, Inc. v. Leaver,*
    408 F. Supp. 2d 1093 (W.D. Wash. 2005) ...................................................... 21

*Faber-Plast v. Kleinert,*
    997 F. Supp. 846 (E.D. Mich. 1998) .............................................................. 18

*Gonzalez v. Naviera Neptuno A.A.,*
    832 F.2d 876 (5th Cir. 1987) ......................................................................... 17

*Gould v. Aerospatiale Helicopter Corp.,*
    40 F.3d 1033 (9th Cir. 1994) ......................................................................... 23

*Grammer, Inc. v. Custom Foam Sys., Ltd.,*
    482 F. Supp. 2d 853 (E.D. Mich. 2007) ......................................................... 20

*Gschwind v. Cessna Aircraft Co.,*
    161 F.3d 602 (10th Cir. 1998) ....................................................................... 17

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501 (1947)................................................................................... 9, 12

*Holder v. Holder,*
    305 F.3d 854 (9th Cir. 2002) ......................................................................... 19

*Hudson v. Delta Air Lines, Inc.,*
    90 F.3d 451 (11th Cir. 1996) ......................................................................... 24

*Intershop Commc'ns, AG v. Superior Court,*
    104 Cal. App. 4th 191 (2002) ........................................................................ 10

*Kokkonen v. Guardian Life Ins. Co. of America,*
    511 U.S. 375 (1994)....................................................................................... 21

*Korech v. Hornwood,*
    58 Cal. App. 4th 1412 (1997) ........................................................................ 10

*Lockman Found. v. Evangelical Alliance Mission,*
    930 F.2d 764 (9th Cir. 1991) ........................................................................9, 12

*Lueck v. Sundstrand Corp.,*
    236 F.3d 1137 (9th Cir. 2001) ...........................................................................9

*Lyon v. Whisman,*
    45 F.3d 758 (3d Cir. 1995) .............................................................................24

*Mangin v. Teledyne Cont'l Motors,*
    91 F.3d 1424 (11th Cir. 1996) ..................................................................11, 16

*Mediterranean Golf, Inc. v. Hirsh,*
    783 F. Supp. 835 (D.N.J. 1991) ....................................................................16

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ...........................................................................................19

*Nagrampa v. MailCoups, Inc.,*
    469 F.3d 1257 (9th Cir. 2006) ........................................................................10

*Nakash v. Marciano,*
    882 F.2d 1411 (9th Cir. 1989) ........................................................................19

*Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines,*
    925 F.2d 1193 (9th Cir. 1991) ........................................................................19

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981).........................................................................9, 12, 16, 17

*Pollux Holding, Ltd. v. Chase Manhattan Bank,*
    329 F.3d 64 (2d Cir. 2003) .......................................................................11, 12

*Postol v. El-Al Israel Airlines, Ltd.,*
    690 F. Supp. 1361 (S.D.N.Y. 1988) ..............................................................18

*Proyectos Orchimex de Costa Rica, S.A. v. E.I. DuPont de Nemours & Co.,*
    896 F. Supp. 1197 (M.D. Fla. 1995)..............................................................18

*Randolph v. Budget Rent-A-Car,*
    97 F.3d 319 (9th Cir. 1996) ...........................................................................22

*Roberts v. Corrothers,*
    812 F.2d 1173 (9th Cir. 1987) ........................................................................22

*Rubin v. Air China Ltd.*,
No. 10-CV-05110-LHK, 2011 WL 1002099 (N.D. Cal. Mar. 21, 2011) ..........23

*Sec. Pac. Nat'l Bank v. Derderian*,
872 F.2d 281 (9th Cir. 1989) ....................................................................22

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007)..................................................................................21

*Soliday v. Miami County, Ohio*,
55 F.3d 1158 (6th Cir. 1995) ....................................................................24

*Stock West, Inc. v. Confederated Tribes of Colville Reservation*,
873 F.2d 1221 (9th Cir. 1989) ..................................................................21

*Teledyne, Inc. v. Kone Corp.*,
892 F.2d 1404 (9th Cir. 1989) ............................................................23, 24

*United Mine Workers v. Gibbs*,
383 U.S. 715 (1966)..................................................................................23

*Verlinden B.V. v. Central Bank of Nigeria*,
461 U.S. 480 (1983)..................................................................................22

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'An*,
379 F.3d 1120 (9th Cir. 2004) ..................................................................19

*Zinsler v. Marriott Corp.*,
605 F. Supp. 1499 (D. Md. 1985)..............................................................17

**STATUTES AND RULES**

28 U.S.C. § 1330(a) ......................................................................................23

28 U.S.C. § 1367 ...........................................................................................23

Cal. Civ. Code § 1670.5(a) ......................................................................11, 15

Cal. Civ. Code § 1717.....................................................................................10

Cal. Corp. Code § 2105 ....................................................................................8

Cal. Corp. Code § 2203(c) ................................................................................8

Fed. R. Civ. P. 12(b)(1) ..................................................................1, 8, 21, 25

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant S.P. Korolev Rocket and Space Corporation, Energia D/B/A Rocket and Space Corporation Energia After S.P. Korolev ("RSC Energia") respectfully requests an order dismissing the Complaint of Plaintiffs The Boeing Company ("Boeing") and Boeing Commercial Space Company ("BCSC") (collectively, "Plaintiffs").  Specifically, RSC Energia requests that the Court (1) dismiss or stay the claims for breach of the Energia Guarantee for *forum non conveniens,* (2) stay the claims for breach of the Creation Agreement under the *Colorado River* doctrine, and (3) dismiss this action for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

## I.   BACKGROUND

On February 1, 2013, Plaintiffs filed the instant Complaint against RSC Energia and four other defendants, namely KB Yuzhnoye, PO Yuzhnoye Mashinostroitelny Zavod (together with KB Yuzhnoye, the "Yuzhnoye Defendants"), Energia Overseas LLC, and Energia Logistics Ltd.  The Complaint asserts claims for breach of various contracts against the various defendants based on separate contracts that relate to a joint venture called Sea Launch, which comprises several companies, created pursuant to a 1995 agreement (the "Creation Agreement") for the purposes of launching commercial satellites into space from an ocean-based floating platform.  (*See, e.g.*, Compl. ¶ 2.)  Plaintiffs assert that this Court is a proper forum for the resolution of their dispute with RSC Energia and that this Court has subject-matter jurisdiction over RSC Energia.  These assertions are unsupported by the facts.  The parties have agreed that a proper and convenient forum for the resolution of the claims related to a 1996 guaranty and security agreement between RSC Energia and BCSC (the "Energia Guarantee") is the United Kingdom, justifying a stay or dismissal on *forum non conveniens* grounds.  Additionally, there is an appeal pending in Sweden from an arbitral award involving claims under the Creation Agreement that are identical to the claims

1   asserted in the instant action.  Therefore, RSC Energia respectfully submits that this

2   Court should stay this action pending decision of the Swedish appeal.  Finally, there

3   is no basis for the direct application of the Foreign Sovereign Immunities Act

4   ("FSIA").  Nor is there a common nucleus of facts that would warrant supplemental

5   subject matter jurisdiction under the FSIA.

6   **A.    RSC Energia.**

7       RSC Energia is a Russian joint-stock company, which manufactures

8   spacecraft and space station components.  (Declaration of Vyacheslav Vasilievich

9   Vasiliev ("Vasiliev Decl.") ¶ 3.)  It is among the largest companies in the Russian

10  space industry.  (*Id.*)  RSC Energia's principal place of business is in Russia.  (*Id.*)

11  RSC Energia does not have offices, employees or bank accounts in California.  (*Id.*)

12  RSC Energia is a public company.  (*Id.* ¶ 4.)  Its shares are publicly traded at the

13  MICEX Stock Exchange (Russia).  (*Id.*)  While, as Plaintiffs correctly point out

14  (Compl. ¶ 9), approximately 38% of its shares are owned by the Russian

15  Federation, contrary to Plaintiffs' "information and belief" allegation, nearly 62%

16  of RSC Energia's shares are held by either private entities or individuals.  (Vasiliev

17  Decl. ¶¶ 5-6, Ex. 1 (March 21, 2013 RSC Energia Shareholder Statement).)  Thus,

18  RSC Energia is not controlled either directly or indirectly by the Russian

19  Federation, and it qualifies by any standard as a private entity, not a foreign

20  sovereign subject to the Foreign Sovereign Immunities Act.

21  **B.    RSC Energia's Involvement in Sea Launch.**

22      During the material times alleged in the Complaint, RSC Energia was a

23  minority owner of the Sea Launch joint venture.  (Vasiliev Decl. ¶ 7.)  When Sea

24  Launch was founded in 1995, RSC Energia's involvement in the joint venture, then

25  based in Oslo, Norway, was as an investor.  (*Id.*)  In exchange for its investment,

26  RSC Energia received 25% of the stock of Sea Launch.  (*Id.*; *see also* Compl. Ex. 1

27  (Sea Launch Creation Agreement) Section 1.5 at p. 35.)[1]  In contrast, Plaintiff

28  _____

[1]    Plaintiffs use consecutive page numbering for all exhibits attached to the

BCSC received 40% of the stock and was the largest stockholder. (*Id.*)  Consistent with its status as the largest shareholder in Sea Launch and with the terms of the Creation Agreement, Plaintiff BCSC had primary operational control of Sea Launch and acted as its manager, including determining how Sea Launch's funds would be spent. (Vasiliev Decl. ¶ 7.)[2]  While RSC Energia held a board position, given its minority status, its actual say in the decisions that shaped Sea Launch's business was minimal and subject to being overruled by Plaintiff BCSC.  (Vasiliev Decl. ¶ 7.)

Plaintiffs allege that "Yuzhnoye and [RSC] Energia attended over fifty Board meetings, including meetings held in Long Beach." (Compl. ¶ 37.)  It is correct that RSC Energia personnel attended fifty Sea Launch board meetings between 1995 and 2009.  (Vasiliev Decl. ¶ 15, Ex. 3 (Table of Sea Launch Board Meetings).)  Of these fifty meetings, the vast majority took place outside the United States, with thirty-six meetings in European locations and five meetings in the Cayman Islands. (*Id.*)  Only nine such board meetings took place in the United States (eight in Long Beach and one in Washington D.C.).  (*Id.*)

Contrary to the allegations in paragraphs 38 through 43 of the Complaint, RSC Energia's activities with respect to Sea Launch were conducted almost entirely either in Russia or through an intermediary.  (*See, e.g.*, Vasiliev Decl. ¶ 8.)  For

---

Complaint.  Thus, the exhibit page numbers set forth herein reference Plaintiffs' consecutive page numbering, rather than the page numbering of each individual exhibit.

[2]   There are several provisions of the Sea Launch Creation Agreement that give BCSC a level of operational control not granted to the other Sea Launch investors.  Specifically, Section 5.6.3(a) gives BCSC the right to "coordinate and oversee" the performance by all parties to the Creation Agreement during the "Developmental Phase" of the Sea Launch enterprise. (Compl. Ex. 1 at p. 44.)  Section 5.6.3(b) authorizes BCSC to provide Sea Launch with a "launch operations plan."  (*Id.*)  Section 5.6.4 obligates RSC Energia to plan and design portions of the launch operation and requires RSC Energia "to submit reports to BCSC as to the work being done and progress being made …." (*Id.* at p. 45.)  The contract also delegates to BCSC "the work of designing and procuring the port and satellite processing facilities and necessary equipment." (*Id.* Section 6.6.1 at p. 50.)  Finally, the Creation Agreement gives BCSC the right to nominate the general manager of the United States Sea Launch Limited Partnership. (*Id.* Section 6.7 at p. 51.)

instance, while RSC Energia, working in Russia, "designed and manufactured each of the Block DM-SL rockets that Sea Launch has used to launch its customers' commercial satellites into space" (Compl. ¶ 41), RSC Energia did not transfer title to the Block DM-SL rockets in California. (Vasiliev Decl. ¶ 8.)  Instead, in almost all instances, the rockets were delivered to port or air facilities in either Ukraine or Russia, at which  time the ownership title was transferred from RSC Energia to Sea Launch Limited Partnership ("SLLP"), a Cayman Islands entity. (*Id.* ¶ 8, Ex. 2 (Table of Blocks DM-SL Terms of Delivery))[3]  The goods were then delivered to Long Beach via a third-party carrier. (Vasiliev Decl. ¶ 8.)[4]

Further, contrary to Plaintiffs' implication (*see, e.g.*, Complaint ¶ 42), RSC Energia performed payload integration and mission analysis ("PIMA") services in Russia, not California. (Vasiliev Decl. ¶ 10.) The computer discs containing the PIMA analysis were delivered to an independent carrier in Russia and, at this point, title to the computer discs passed to SLLP. (*Id.*)

In Paragraphs 46 through 48 of the Complaint, Plaintiffs allege that a substantial relationship exists between Plaintiffs' claims and RSC Energia's alleged contacts with California.  However, Plaintiffs' claims against RSC Energia relate to the Creation Agreement and the Energia Guarantee, pursuant to which RSC Energia purportedly guaranteed certain loans made by Plaintiffs and third parties.[5] (*See, e.g.*, Compl. ¶¶ 68-102.)  The Creation Agreement provides for arbitration in Sweden.[6] (Compl. Ex. 1 Article 13 at p. 59.)  The Energia Guarantee provides that

---

[3]     The table illustrates that most deliveries of Blocks DM-SL were made to port or air facilities in Russia and Ukraine where RSC Energia transferred legal title of the components to SLLP.  (Vasiliev Decl. Ex. 2.)
[4]     None of the contracts entered into by RSC Energia and SLLP pertaining to the deliveries were signed in the U.S.  (Vasiliev Decl. ¶ 9.)  Rather, they were signed either in Europe or the Cayman Islands.  (*Id.*)
[5]     Plaintiffs allege breach of contract claims against RSC Energia based on the Creation Agreement and the Energia Guarantee.  (*See* Compl. ¶¶ 113-117 and 124-130.)  RSC Energia has numerous valid defenses to alleged obligations under the agreement and the guarantee.
[6]     As described *infra* in section I-C, Plaintiffs have consistently taken the position that there is jurisdiction over their claims under the Creation Agreement in Sweden.  (Declaration of Kaj Hobér ("Hobér Decl.") ¶¶ 7, 9, 11.)  They have

the agreement "shall be construed in accordance with and governed by the laws of the United Kingdom." (Compl. Ex. 3 (Energia Guarantee) Section 11(d) at p. 87) and that "[a]ny judicial proceeding brought against RSC Energia under this Agreement may be brought in any court of competent jurisdiction in the United Kingdom ..." (*Id.* Section 11(e)).[7]   RSC Energia further waived any venue-related objections it might otherwise have to an action in a U.K. court of competent jurisdiction. (*Id.* Section 11(e)).[8]   Thus, by their terms, the Creation Agreement has closer ties to Sweden than to California and the Energia Guarantee has closer ties to the U.K. than to California.

In an effort to avoid the consequences of their legal stratagem in Sweden, their choice of U.K. law, and their contractual acknowledgement that the U.K. is a proper and convenient forum for this dispute, Plaintiffs claim that the loan proceeds of the loans subject to the Creation Agreement and Energia Guarantee were used largely to fund Sea Launch's Long Beach operations. (Compl. ¶¶ 47-48.) That allegation is false. A considerable portion of the loans was used during the development phase (up to 1998/1999) to finance vessel construction in Scotland and launch platform construction in Oslo, Norway. (Vasiliev Decl. ¶ 11.) These loan proceeds were thus used for purposes which had *no direct connection to*

---

appealed adverse rulings by the Swedish Arbitrator (defined below) on jurisdictional issues, and have not withdrawn such appeal following the commencement of the present litigation in California. (*Id.* ¶¶ 9, 11.) Thus, Plaintiffs' position in Sweden continues to be that their claims under the Creation Agreement are covered by the arbitration clause in that agreement, *i.e.*, that an arbitrator seated in Sweden is exclusively competent to resolve such claims. (*Id.* ¶ 11.)

[7]   Plaintiffs also bring a similar claim against Yuzhnoye for breach of contract based on the Creation Agreement and the "Yuzhnoye Guarantee" financing agreement. (*See* Compl. ¶¶ 118-123.) The Yuzhnoye Guarantee contains identical choice of law and forum provisions to the Energia Guarantee. (*See* Compl. Ex. 2 (Yuzhnoye Guarantee) Sections 11(d)&(e) at p. 79.)

[8]   While the venue provisions in the Energia Guarantee are one-sided (the contract specifies that, if BCSC brings a claim against RSC Energia, it "may" elect to do so in the United Kingdom (Compl. Ex. 3 at p. 87), but, if RSC Energia were to bring a claim against BCSC, such claim "shall be brought only in a court in the United Kingdom" (*Id.*)), it is clear that the parties agreed that the U.K. would be an appropriate and convenient forum.

1   *activities in California.* (*Id.*)  While certain remaining funds may have been later

2   used to support the Sea Launch infrastructure in Long Beach, these funds were paid

3   primarily for Boeing's and (non-party) Kvaerner's cost overruns in the areas of

4   their responsibility within Sea Launch.  (*Id.*)  RSC Energia was not involved in the

5   maintenance or operations of the Long Beach facility for which these funds were

6   used.  (*Id.*)

7   **C.      The Swedish Arbitration and Appeal Proceedings.**

8           On October 19, 2009, Plaintiffs submitted to the Arbitration Institute of the

9   Stockholm Chamber of Commerce (the "Swedish Arbitration") a Notice of

10  Arbitration against RSC Energia, Yuzhnoye and Aker Maritime Finance AS

11  ("Aker"), a non-party in the instant action.  (Hobér Decl. ¶ 6; Ex. 1 (Swedish

12  Arbitral Award) ¶ 19.)  Former Swedish Supreme Court Justice Hans Danelius was

13  appointed Sole Arbitrator in the dispute (the "Swedish Arbitrator").  (*Id.* ¶ 6; Ex. 1

14  ¶ 21.)  The claims asserted by Plaintiffs in the Swedish Arbitration under the

15  Creation Agreement are virtually identical to the claims asserted in the instant

16  action.  (Hobér Decl. ¶ 6.)

17          In March 2010, RSC Energia and Yuzhnoye raised objections to the

18  propriety of the Swedish Arbitrator exercising jurisdiction over the claims asserted

19  by Boeing, a non-signatory to the Creation Agreement.  (Hobér Decl. ¶ 7, Ex. 1 ¶¶

20  26-31.)  Plaintiffs maintained that their claims were covered by the arbitration

21  agreement in the Creation Agreement and that the Swedish Arbitrator, therefore,

22  had jurisdiction over the dispute.  (Hobér Decl. ¶ 7.)  On October 11, 2010, the

23  Swedish Arbitrator dismissed Plaintiffs' claims in the Swedish Arbitration for lack

24  of jurisdiction because Plaintiffs improperly attempted to include the claims of

25  Boeing in the Swedish Arbitration.  (Hobér Decl.  ¶ 7, Ex. 1 ¶¶ 264-324.)[9]

26  _____
    [9]     The Swedish Arbitrator concluded that Boeing, which was not a party to the
27  Creation Agreement, lacked the right to rely on the arbitration clause in that
    agreement.  (Hobér Decl. ¶ 8.)  While BCSC was a party to the Creation
28  Agreement, it had brought a claim on behalf or/for the benefit of Boeing, a non-
    party.  (*Id.*)  Thus, the Swedish Arbitrator dismissed the claims brought by

On January 11, 2011, Plaintiffs filed an appeal of the Swedish Arbitration Award with the Svea Court of Appeal, Stockholm (the "Svea Court"), asking the Svea Court to overturn the Swedish Arbitrator's finding of a lack of jurisdiction. (Hobér Decl. ¶ 9.)  Under the relevant provisions of Swedish law, this appeal from an arbitral award declining jurisdiction is *de novo* and includes the presentation of evidence, including live witnesses. (*Id.*)  The Svea Court is effectively trying the issue of whether there is a valid arbitration agreement in the first instance. (*Id.*)

RSC Energia has requested that Plaintiffs' appeal be dismissed by the Svea Court on the basis, *inter alia*, that the Creation Agreement contains a provision excluding appeals against decision of the Sole Arbitrator. (*Id.* ¶ 10.)  Plaintiffs have rejected this request, arguing that the Svea Court is competent to try the appeal. (*Id.*)  The Svea Court has decided to treat RSC Energia's dismissal request as a preliminary and separate matter. (*Id.* )  Plaintiffs and RSC Energia have exchanged several rounds of submissions on this issue and the Svea Court's decision on the dismissal request can be expected shortly. (*Id.*)  Assuming the Svea Court finds that it is competent to try the substance of Plaintiffs' appeal, RSC Energia expects that a hearing will take place within the next 8-10 months. (*Id.*)

Plaintiffs have very strongly taken the position that there is jurisdiction over their claims under the Creation Agreement in Sweden. (Hobér Decl. ¶ 11, Ex. 1 ¶¶ 48-58, 175-205.)  They have not withdrawn their appeal following the commencement of the present litigation in California. (Hobér Decl. ¶ 11.)  Thus, Plaintiffs' position in Sweden continues to be that their claims under the Creation Agreement are covered by the arbitration clause in that agreement, *i.e.*, that an arbitrator seated in Sweden is exclusively competent to resolve such claims. (*Id.*) Given the vehemence of Plaintiffs' position with respect to the propriety of having these disputes decided in arbitration in Sweden, a brief stay to allow the Swedish

Plaintiffs. (*Id.*)

1  appeal to be decided appears appropriate and in the best interests of judicial

2  efficiency and economy.

3  **D.    Plaintiff BCSC Is Not Registered to Do Business in California.**

4         Plaintiff BCSC is a Delaware corporation with its principal place of business

5  in Illinois.  (Compl. ¶ 7.)  BCSC specifically alleges that its claims against Energia

6  arise from the Energia Guarantee, which allegedly enabled Sea Launch "to establish

7  its Long Beach operations."  (Compl. ¶ 48.)  Moreover, as detailed *supra* in

8  footnote 2, the Creation Agreement specifically gave BCSC a level of managerial

9  control over the Sea Launch operation in Long Beach that was unique among the

10  parties to the Sea Launch venture.

11         Despite these facts, BCSC never alleges in the Complaint that it has

12  registered as a foreign corporation to do business in California pursuant to Cal.

13  Corp. Code § 2105.  A search of the California Secretary of State website well after

14  the Complaint was filed reveals that BCSC still has not registered in California.

15  (*See* Declaration of Rita M. Haeusler ("Haeusler Decl.") ¶ 2, Ex. 1 (Search

16  Results).)[10]

17                              **II.    ARGUMENT**

18         The Complaint should be (1) dismissed or stayed for *forum non conveniens*

19  as to the claims for breach of the Energia Guarantee, (2) stayed under the Colorado

20  River doctrine until such time as the Swedish appeal is decided as to the claims for

21  breach of the Creation Agreement, and (3) dismissed for lack of subject-matter

22  jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

---

[10]    In the absence of such a registration, a foreign corporation "shall not maintain any action or proceeding upon any intrastate business so transacted in any court of this state …."  Cal. Corp. Code § 2203(c).  This statute is applicable to foreign corporations attempting to sue in federal courts located in California.  *See, e.g., Benson v. Crest Energy, Inc.*, No. CIV. S-04 1249 FCD EFB, 2007 WL 1080394, at *1 (E.D. Cal. April 5, 2007) (denying reconsideration of dismissal where plaintiff foreign corporation had not registered to do business in California).  Thus, all of BCSC's claims in the Complaint should be dismissed.

A.   **<u>Plaintiffs' Claims for Breach of the Energia Guarantee Should be</u>**

**<u>Dismissed or Stayed for *Forum Non Conveniens.*</u>**[11]

The U.S. Supreme Court has held that a district court may decline to exercise jurisdiction where litigation in a foreign forum would be more convenient for the parties. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947) (superseded by statute on other grounds); *see also Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). In staying or dismissing an action on *forum non conveniens* grounds, a court considers: (1) whether an adequate alternative forum exists and (2) whether the balance of private and public interest factors favors dismissal. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22, 257 (1981); *Gulf Oil*, 330 U.S. at 507-09; *Ceramic Corp. of Am. v. Inka Mar. Corp. Inc.*, 1 F.3d 947, 949 (9th Cir. 1993); *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir. 1991). Because the United Kingdom provides an adequate and alternative legal forum in which to resolve Plaintiffs' claims and because the parties, including Plaintiffs, have specifically agreed that the United Kingdom is a proper and convenient forum, this case should be dismissed or stayed in favor of resolving Plaintiffs' claims for breach of the Energia Guarantee in the United Kingdom.

1.   **The United Kingdom Provides an Adequate Alternative Forum for Resolution of Plaintiffs' Claims for Breach of the Energia Guarantee.**

An alternative forum ordinarily exists when the defendant is amenable to service of process in the foreign forum. *Piper Aircraft*, 454 U.S. at 254 n. 22; *Contact Lumber Co. v. P.T. Moges Shipping Co., Ltd.*, 918 F.2d 1446, 1450 (9th Cir. 1990). Here, RSC Energia has specifically contracted with Plaintiff BCSC to provide for the jurisdiction of U.K. courts in the resolution of disputes arising under the Energia Guarantee. (*See* Compl. Ex. 3 Sections 11(d)&(e) at p. 87.)[12]  BCSC

---

[11]   As more fully set forth in Section II-B below, Plaintiffs claims under the Creation Agreement should be stayed pending decision of the Swedish Appeal.

[12]   As noted *supra* in footnote 7, the Yuzhnoye Guarantee contains identical

1   should not now be permitted to escape the consequences of selecting U.K. law as

2   the governing law and agreeing that the U.K. courts are a proper and convenient

3   forum.

4         Moreover, the nature of the forum-selection clause is such that this Court

5   should require Plaintiff BCSC to bring its action in the United Kingdom.  The

6   Energia Guarantee specifically gives BCSC the option of bringing its claims in the

7   U.K., and RSC Energia has waived potential objections to this election.  (Compl.

8   Ex. 3 Section 11(e) at p. 87.)  At the same time, however, RSC Energia is required

9   under the contracts to bring its claims in the United Kingdom.  (Id.)

10        Forum selection clauses are generally valid and given effect in California

11   unless the enforcement of such clause would be "unreasonable."  *Nagrampa v.*

12   *MailCoups, Inc.*, 469 F.3d 1257, 1287 (9th Cir. 2006) (citing *Intershop Commc'ns,*

13   *AG v. Superior Court*, 104 Cal. App. 4th 191, 196 (2002)).  However, if the "place

14   and manner" restrictions of a forum selection provision are "unduly oppressive,"

15   (*see Bolter v. Superior Court*, 87 Cal. App. 4th 900, 909-10 (2001) (adhesive

16   arbitration provision had its "place and manner" clause severed where it would

17   have required franchisees in California to bring their dispute in Utah), or have the

18   effect of shielding the stronger party from liability, (*see Comb v. PayPal, Inc.,* 218

19   F. Supp. 2d 1165, 1177 (N.D. Cal. 2002) ("Limiting venue to PayPal's backyard

20   appears to be yet one more means by which the arbitration clause serves to shield

21   PayPal from liability instead of providing a neutral forum in which to arbitrate

22   disputes")), then the forum selection provision is unconscionable.  *See Nagrampa*,

23   469 F.3d at 128.

24        The one-sided nature of this particular forum selection contractual provision

25   is unconscionable under California law.  *See Korech v. Hornwood*, 58 Cal. App. 4th

26   1412, 1418-19 (1997) (discussing enactment of Cal. Civ. Code § 1717 to establish a

27   mutual remedy for contracts that only make attorney fees available to one party and

28   choice of law and forum provisions as the Energia Guarantee.

1   to prevent oppressive use of those one-sided attorney fees provisions).  California

2   law allows courts to limit the application of such unconscionable clauses so as to

3   avoid an unconscionable result.  *See* Cal. Civ. Code § 1670.5(a) ("If the court as a

4   matter of law finds the contract or any clause of the contract to have been

5   unconscionable at the time it was made the court may … so limit the application of

6   any unconscionable clause as to avoid any unconscionable result.").  In this case,

7   equity can only be served by reading this contractual provision as requiring

8   Plaintiffs to bring their breach of contract claim under the Energia Guarantee in the

9   United Kingdom.  Thus, the U.K. is an available alternative forum.  *Mangin v.*

10   *Teledyne Cont'l Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996); *Contact Lumber*, 918

11   F.2d at 1450.

12       Additionally, U.S. courts have found the United Kingdom to be an alternative

13   available forum for plaintiffs on numerous occasions because of its evolved and fair

14   judicial system:

15           Any suggestion that this system of courts [in the United
            Kingdom] does not provide impartial tribunals or
16           procedures compatible with the requirements of due
            process of law borders on the risible.  The courts of
17           England are fair and neutral forums.  The origins of our
            concept of due process of law are English, and the
18           English courts … are highly regarded for impartiality,
            professionalism, and scrupulous regard for procedural
19           rights.  The English judicial system … is the very fount
            from which our system developed; a system which has
20           procedures and goals which closely parallel our own.

21   *Soc'y of Lloyd's v. Ashenden*, 233 F.3d 473, 476-477 (7th Cir. 2000), (internal

22   quotation marks and citations omitted); *see also Neuralstem, Inc. v. ReNeuron, Ltd.*,

23   365 Fed. App'x 770, 771 (9th Cir. 2010); *Adams v. Merck & Co.*, 353 Fed. App'x

24   960, 963 (5th Cir. 2009); *Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d

25   64, 75 (2d Cir. 2003).

26       In this regard, the U.K. legal system affords substantive fairness to foreign

27   litigants, including access to the courts, right of appeal, and recognition and

28   enforcement of judicial declaration.  (*See* Hobér Decl. ¶ 12.)  The U.K. legal system

1   also recognizes and enforces international law.  (*See id.*)  Finally, the U.K. legal

2   system recognizes and provides damages for breach of contract claims, such as

3   those included in Plaintiffs' Complaint.  *See id.* ¶ 13; *see also Pollux Holding, Ltd.*,

4   329 F.3d at 75 ("[T]here can be no doubt that England permits litigation to resolve

5   commercial disputes of the type presented in this case.").  As a result, the U.K.

6   presents an adequate alternative forum for the resolution of the claims raised by

7   Plaintiffs' Complaint.

8   **2.      Private and Public Factors Weigh Heavily in Favor of**

9   **Adjudicating Plaintiffs' Claim for Breach of the Energia**

10   **Guarantee in the United Kingdom.**

11   With respect to the balancing of private and public factors, a court can stay or

12   dismiss if *either* the private factors *or* the public factors warrant a stay or dismissal.

13   *Piper Aircraft*, 454 U.S. at 242-44; *Lockman Found.*, 930 F.2d at 767.  Here, <u>both</u>

14   the private and public factors favor resolution of the claim for breach of the Energia

15   Guarantee in the United Kingdom, not the United States.

16   **a.      The Private Factors Favor Adjudicating Plaintiffs' Claims in**

17   **the United Kingdom.**

18   The private factors include the residence of the parties and witnesses, the

19   forum's convenience to the litigants, the access to physical evidence and other

20   sources of proof, the availability of compulsory process to obtain the attendance of

21   hostile witnesses, the cost of transporting witnesses, the enforceability of any

22   judgment obtained in the alternate forum, and all other practical problems that make

23   trial of a case easy, expeditious and inexpensive.  *Piper Aircraft*, 454 U.S. at 241

24   n.6 (quoting *Gulf Oil*, 330 U.S. at 508); *Creative Tech., Ltd. v. Aztech Sys. Pte, Ltd.*,

25   61 F.3d 696, 703 (9th Cir. 1995); *Lockman Found.*, 930 F.2d at 769.  These private

26   factors strongly favor adjudication in the United Kingdom.

27

28

### i.   The United Kingdom is a More Convenient Forum.

RSC Energia is a Russian joint-stock corporation with its principal place of business in Russia. (Vasiliev Decl. ¶ 3.)  RSC Energia has no offices, employees, or bank accounts in California. (*Id.*)  It would be extremely burdensome for RSC Energia to be forced to litigate in California, a distant and inconvenient forum. (*Id.* ¶ 13.)  Most, if not all, of the RSC Energia witnesses likely to testify in this action, including the individuals who negotiated the Creation Agreement and Energia Guarantee with Plaintiffs and who made the decisions as to whether further payments were due, are located in Russia. (*Id.*)  And, during the material times alleged in the Complaint, RSC Energia was not involved in running or managing the Sea Launch property in Long Beach, California. (*Id.* ¶ 12.)

Furthermore, RSC Energia's design and construction of the Blocks DM-SL rockets and RSC Energia's PIMA analysis was all conducted in Russia. (*Id.* ¶¶ 8, 10.)  These goods and services were mostly transferred to California through an intermediary, namely SLLP. (*Id.*)  Thus, the RSC Energia witnesses, evidence and documents related to this issue are located in Russia.

In contrast, the United Kingdom is a more accessible forum for RSC Energia, given that RSC Energia has expressly contemplated the possibility of litigation in the United Kingdom. (*See, e.g.*, Compl. Ex. 3 Section 11(e) at p. 87.)  And, as described above, it would be unconscionable to interpret the Energia Guarantee such that Plaintiffs have carte blanche to bring an action anywhere they choose, while precluding RSC Energia from raising objections to the U.K. as a venue and forcing RSC Energia to bring its claims only in the U.K.  The only equitable result would be for the Court to rule that the U.K. is the proper forum for the instant action.

Additionally, the fact that a substantial portion of Sea Launch-related activities pertinent to the Complaint took place in Europe makes a European forum much more appropriate for the instant action.  For instance, through December

1   1996, Sea Launch headquarters were located in Oslo, Norway.  (Vasiliev Decl. ¶

2   14.)  As another example, none of the contracts concluded by RSC Energia and

3   SLLP relating to the Block DM-SL Rockets were signed in the United States;

4   rather, a number of them were signed in Europe.  (*Id.* ¶ 9.)  Also, thirty-six of the

5   fifty Sea Launch board meetings that took place between 1995 and 2009 took place

6   in European locales.  (*Id.* ¶ 15, Ex. 3.)  Finally, a substantial portion of the loan

7   proceeds of the loans subject to the Creation Agreement and Energia Guarantee

8   were used to finance vessel construction in Scotland and launch platform

9   construction in Oslo, Norway.  (Vasiliev Decl. ¶ 11.)  The witnesses and evidence

10  pertaining to these issues are located in Europe, not in California.

11          Thus, a substantial portion of the witnesses and documents that are at the

12  core of this case are located in Europe, justifying a dismissal of the claim for breach

13  of the Energia Guarantee.  *See, e.g., Beekmans v. J.P. Morgan & Co.*, 945 F. Supp.

14  90, 93-94 (S.D.N.Y. 1996) ("Here, virtually all of the witnesses and other sources

15  of proof are located in the Netherlands or the United Kingdom …. The inability to

16  obtain the testimony of these witnesses is a compelling factor favoring dismissal.").

17          **ii.     The Parties Have Specifically Agreed that the United**

18                  **Kingdom is a Proper and Convenient Forum for Their**

19                  **Disputes.**

20          As described *supra* in section I-B, RSC Energia has specifically contracted

21  with BCSC to specify the United Kingdom as the forum for judicial proceedings

22  under the Energia Guarantee.  RSC Energia has contractually accepted the

23  jurisdiction of the U.K. courts for this purpose, agreed to be bound by any such

24  judgment rendered in the U.K., and has waived its objections to the U.K. as a

25  venue.  (*See* Compl. Ex. 3 Section 11(e) at p. 87.)  By including this clause, BCSC

26  has agreed that the United Kingdom is a proper and convenient forum for disputes

27  arising under the Energia Guarantee.  RSC Energia requests that this Court refuse to

28  accept the unconscionable one-sided nature of the forum selection clause in the

1    Guarantee contracts.  As described *supra*, this Court should exercise its authority

2    under Cal. Civ. Code § 1670.5(a) to avoid an unconscionable result by reading the

3    contracts to require Plaintiffs to bring the claims arising from the Energia

4    Guarantee in the United Kingdom.

5              iii.    **Plaintiffs May Argue That RSC Energia Is Precluded**

6                      **from Raising Cross Claims Against Plaintiffs in the**

7                      **United States.**

8              The forum selection clause in the Energia Guarantee specifically states that

9    "[a]ny judicial proceeding by the Guarantor [RSC Energia] against the Lender

10   [BCSC] shall be brought **only** in a court in the United Kingdom."  (Compl. Ex. 3

11   Section 11(e) at p. 87 (emphasis added).)  While RSC Energia believes that the

12   language of this clause would not prevent it from bringing compulsory

13   counterclaims before this Court in the instant action, Plaintiffs may argue to the

14   contrary and may further argue that RSC Energia does not have the right to bring

15   permissive counter-claims or cross-claims in any forum except a U.K. court.

16   Therefore, depending on the resolution of such issue by this Court, RSC Energia

17   could find itself in the position of being contractually precluded from bringing

18   relevant claims against Plaintiffs before this Court.

19             Thus, proceeding with the instant action in the United States may force the

20   initiation of parallel proceedings in order for RSC Energia to make relevant

21   counter-claims against Plaintiffs.  This is an outcome that weighs against retention

22   of the case.  *See, e.g., BCCI Holdings (Luxembourg), Societe Anonyme v. Mahfouz,*

23   828 F. Supp. 92, 98 (D.D.C. 1993) (dismissing where "English litigation clearly

24   will relieve the defendants of the burdens of litigating parallel proceedings and will

25   negate the possibility of inconsistent judgments").  This favors a stay or dismissal

26   of the claim for breach of the Energia Guarantee in favor of litigating that claim in

27   the United Kingdom, where other parties and claims can be added to this action.

28

1        **b.**     **The Public Factors Also Favor Adjudicating Plaintiffs'**

2                 **Claims in the United Kingdom.**

3        Public factors include the administrative difficulties flowing from court

4 congestion, local interest in having localized controversies decided at home, interest

5 in having a diversity case tried in a forum familiar with the law that governs the

6 action, and the avoidance of unnecessary problems in conflict of law.  *See Creative*

7 *Tech., Ltd.*, 61 F.3d at 703-04.  Here, the public factors strongly favor adjudication

8 in the United Kingdom.

9          **i.**     **The Fact that U.K. Law Will Govern Some, if Not All,**

10                 **of Plaintiffs' Claims Supports Dismissal of the Claim**

11                 **for Breach of the Energia Guarantee.**

12        As the Supreme Court observed in *Piper Aircraft*, and as the lower courts

13 have consistently reiterated, "the need to apply foreign law point[s] towards

14 dismissal."  454 U.S. at 260; *see also Mediterranean Golf, Inc. v. Hirsh*, 783 F.

15 Supp. 835, 852 (D.N.J. 1991) (dismissing French law-based claims because

16 "France would be more familiar with applying the law of France"); *Magnin*, 91

17 F.3d at 1430 (dismissing where it would be "[f]ar better that the case be tried in

18 France by one or more jurists as familiar with French law as we are unfamiliar with

19 it.").

20        Here, the Energia Guarantee provides that the agreement "shall be construed

21 in accordance with and governed by the laws of the United Kingdom." (Compl. Ex.

22 3 Section 11(d) at p. 87.)  This choice of law provision governs Plaintiffs' cause of

23 action that derives from the Energia Guarantee.  Therefore, pursuant to the choice

24 of law provision in the Energia Guarantee, English law governs Plaintiffs' claims

25 and an English court is in the best position to decide these claims.

26

27

28

ii.     **The United Kingdom Has the Greater Interest in Resolving this Dispute.**

In deciding a *forum non conveniens* motion, a court must consider the interest in having controversies decided by the forum with the greater interest in the resolution of the dispute.  Given that the United Kingdom is where the parties are subject to jurisdiction under the terms of the Energia Guarantee and given that U.K. law governs the interpretation and enforcement of these contracts, the United Kingdom has the overwhelming interest in this litigation.  *See Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 837 (5th Cir. 1993); *Dahl v. United Tech. Corp.*, 632 F.2d 1027, 1032 (3d Cir. 1980) (dismissing because "factor of local public interest in the forum state clearly militates in favor of trial in Norway").

iii.    **California Should Not Be Unduly Burdened with Adjudicating this Matter.**

Finally, a court must consider the general administrative burdens posed by a case.  *See, e.g., Piper Aircraft*, 454 U.S. at 241 & n.6; *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 609 (10th Cir. 1998).  Plaintiffs' case is not a typical, garden variety lawsuit -- it raises significant substantive and procedural issues and challenges that could prove to be a substantial drain on this Court's resources.  *See Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 879 (5th Cir. 1987) ("The administrative difficulties associated with trying a case in a forum located thousands of miles away from the majority of the witnesses and the evidence are obvious.").  The difficulties posed by this case are even more burdensome in light of the absence of contacts between California and the facts underlying this Action, as detailed *supra* in section I-B.  Indeed, "[t]he ability of federal courts in the United States to give speedy justice in matters properly before them would be substantially impaired to the prejudice of all 'if they took it upon themselves also to resolve the disputes of the rest of the world.'"  *Zinsler v. Marriott Corp.*, 605 F. Supp. 1499, 1506 (D. Md. 1985) (quoting *Cruz v. Maritime Co. of Philippines*, 549

1   F. Supp. 285, 290 (S.D.N.Y. 1982), aff'd 702 F.2d 47 (2d Cir. 1983) (dismissing

2   case on *forum non conveniens* grounds where the suit involved foreign parties and

3   events that occurred abroad)).

4        This Court should be wary of the problems that would be posed if United

5   States courts reached out to adjudicate what is essentially foreign litigation.  *See*

6   *Faber-Plast v. Kleinert*, 997 F. Supp. 846, 850 (E.D. Mich. 1998) ("[T]here is no

7   reason to burden the docket of this court, or this court's jurors, with a case with

8   such minimal local connection.") (internal citation omitted); *Proyectos Orchimex*

9   *de Costa Rica, S.A. v. E.I. DuPont de Nemours & Co.*, 896 F. Supp. 1197, 1203

10  (M.D. Fla. 1995) (dismissing in part because the "court's docket would be thrown

11  into chaos" if it retained jurisdiction of such "complex" cases); *Postol v. El-Al*

12  *Israel Airlines, Ltd.*, 690 F. Supp. 1361, 1364 (S.D.N.Y. 1988) ("Courts may

13  validly protect their dockets from cases which arise within their jurisdiction, but

14  which lack significant connection to it.") (internal citation omitted).

15       In the present case, the United States has little connection with the operative

16  facts of this litigation.  (*See generally* Vasiliev Decl.)  Very little of the alleged

17  conduct by RSC Energia took place in California and none of the conduct relevant

18  to the alleged breach of the Creation Agreement or the Energia Guarantee took

19  place in California.  The state of California should not be burdened with

20  adjudicating this matter, particularly when the parties have agreed that the United

21  Kingdom is a proper and convenient venue for the resolution of disputes relating to

22  the Energia Guarantee.  A stay or dismissal under the doctrine of *forum non*

23  *conveniens* is warranted under these circumstances.

24  **B.    Plaintiffs' Claims for Breach of the Creation Agreement Should be**
        **Stayed Under the *Colorado River* Doctrine, As Doing So Will Serve**
        **the Interests of Wise Judicial Administration.**

27       Under the *Colorado River* doctrine, a federal court may stay its proceedings

28  in deference to a pending parallel foreign proceeding where doing so would serve

1   the interests of "wise judicial administration," giving regard to the conservation of

2   judicial resources and comprehensive disposition of litigation.  *See Neuchatel Swiss*

3   *Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193 (9th Cir. 1991); *see also*

4   *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976).

5       *Colorado River* and subsequent cases set out a series of factors that, although

6   not exclusive, are relevant in determining whether a stay is appropriate, including:

7   (1) inconvenience of the federal forum; (2) the desirability of avoiding piecemeal

8   litigation; (3) the order in which jurisdiction was obtained by the concurrent

9   forums; (4) whether foreign law or U.S. law provides the rule of decision on the

10  merits; (5) whether the foreign court proceedings are adequate to protect the federal

11  litigants' rights; and (6) whether exercising jurisdiction would promote forum

12  shopping.  *Colorado River*, 424 U.S. at 818; *Moses H. Cone Mem. Hosp. v.*

13  *Mercury Constr. Corp.*, 460 U.S. 1, 15-16 (1983) (superseded by statute on other

14  grounds); *Holder v. Holder*, 305 F.3d 854, 867-68 (9th Cir. 2002).

15      **1.**    **The Swedish Arbitration and the Claims in this Action for**

16                **Breach of the Creation Agreement Are Sufficiently Similar to**

17                **Justify Staying this Action.**

18      Before applying the *Colorado River* analysis, the court first determines

19  whether the domestic and foreign actions are sufficiently parallel.  *Yahoo! Inc. v. La*

20  *Ligue Contre Le Racisme et L'An*, 379 F.3d 1120, 1138 (9th Cir. 2004); *In re*

21  *Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1170 (C.D. Cal.

22  2008); *El Centro Foods, Inc. v. Nazarian*, No. CV09-06395 ODW, 2010 WL

23  1710286, at *2 (C.D. Cal. Apr. 21, 2010).  The Ninth Circuit standard is not one of

24  exact parallelism, but looks to whether the two proceedings are "substantially

25  similar."  *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989).

26      In the Swedish Arbitration, Plaintiffs made breach of contract allegations

27  against RSC Energia and Yuzhnoye based on the Creation Agreement, allegations

28  that are nearly identical to the claims under the Creation Agreement made in the

1    instant action.  (Hobér Decl. ¶ 6, Ex. 1 ¶¶ 48-57.)  The Swedish Arbitration

2    proceeding is thus parallel to the instant action.  A resolution of the Swedish

3    Arbitration on the merits would thus resolve a substantial portion, if not all, of the

4    claims for breach of the Creation Agreement in the instant action.  *See Grammer,*

5    *Inc. v. Custom Foam Sys., Ltd.*, 482 F. Supp. 2d 853, 857 (E.D. Mich. 2007)

6    (finding that actions are parallel where "principal issue in both actions is the same

7    set of commercial transactions that occurred between the same two parties, and the

8    resolution of the contractual rights and duties in either of the pending cases will

9    likely resolve the issues in the other case.").

10         **2.     The *Colorado River* Factors Weigh in Favor of Staying or**

11              **Dismissing the Claims for Breach of the Creation Agreement**

12              **Pending Decision of the Appeal in Sweden.**

13         The *Colorado River* factors clearly weigh in favor of staying Plaintiffs'

14   claims for breach of the Creation Agreement.  As a preliminary matter, as discussed

15   in detail above, requiring the parties to litigate in this Court will be extremely

16   inconvenient to all parties because California is a distant forum for the entities

17   based in Russia and Ukraine and because most, if not all, of the RSC Energia

18   witnesses, documents and evidence are likely to be located in Russia.  These facts

19   weigh in favor of abstention.

20         Additionally, staying the claims based on the Creation Agreement will

21   prevent the possible duplication of efforts and the risk of inconsistent outcomes,

22   which might result from the piecemeal litigation of this dispute.  If Plaintiffs are

23   successful in their application to set aside the Swedish Arbitrator's award and both

24   cases proceed simultaneously, each forum may potentially be determining whether

25   RSC Energia and Yuzhnoye breached their repayment or guarantee obligations to

26   Plaintiffs under the Creation Agreement.  Given the likelihood that the Swedish

27   application will be heard within 8-10 months, if not dismissed earlier (Hobér Decl.

28   ¶ 10), a brief stay to avoid a duplication of effort in an inconvenient forum appears

1    warranted. *See El Centro*, 2010 WL 1710286, at *3 (staying federal action to

2    prevent duplication of efforts and risk of inconsistent outcomes that might result

3    from piecemeal litigation); *see also Sinochem Int'l Co. Ltd. v. Malaysia Int'l*

4    *Shipping Corp.*, 549 U.S. 422, 435 (2007) (finding that economy of judicial system

5    was disserved by allowing litigation to continue in Pennsylvania, when proceedings

6    were ongoing between same parties in China).

7        The remaining factors also all favor granting a stay in this case. The Swedish

8    Arbitration was commenced in 2009, years before the filing of the instant action.

9    (Hobér Decl. ¶ 6, Ex. 1 ¶ 19.) As discussed above, assuming that Plaintiffs are

10    successful in having the Svea Court overturn the Swedish Arbitrator's finding of

11    lack of jurisdiction, then Plaintiffs' claims for breach of the Creation Agreement

12    can be asserted in the Swedish Arbitration. (*See* Hobér Decl. ¶¶ 6-11.) Thus,

13    Plaintiffs will not be prejudiced if the case is stayed. *See Enfission, Inc. v. Leaver*,

14    408 F. Supp. 2d 1093, 1097 (W.D. Wash. 2005) (abstaining where plaintiff could

15    assert its claims in parallel state court action). Staying this case will save the

16    parties tremendous resources as they will be spared the expense of re-litigating the

17    same issues in two different forums were Plaintiffs to be successful on their appeal.

18    For all of the foregoing reasons, RSC Energia respectfully submits that the claims

19    for breach of the Creation Agreement should be stayed or dismissed pending the

20    outcome of the application to set aside the arbitration award in Sweden.

21    **C.**    **This Court Lacks Subject-Matter Jurisdiction Over RSC Energia**

22        **Under Rule 12(b)(1).**

23        Because Plaintiffs invoked this Court's jurisdiction, Plaintiffs bear the burden

24    of establishing federal subject matter jurisdiction. *Kokkonen v. Guardian Life Ins.*

25    *Co. of America*, 511 U.S. 375, 376-378 (1994); *Stock West, Inc. v. Confederated*

26    *Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Because the

27    Court's power to hear the case is at stake, the Court is not limited to considering the

28    allegations of the Complaint. The Court may consider extrinsic evidence; and if the

1    evidence is disputed, it may weigh the evidence in order to determine whether it has

2    power to hear the case. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.

3    1987). "The presumption of correctness we accord to a complaint's allegations

4    falls away on the jurisdictional issue once a defendant proffers evidence that calls

5    the court's jurisdiction into question." *Commodity Trend Serv. v. Commodity*

6    *Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998).

7         Plaintiffs allege that this action arises under the FSIA because "it is a civil

8    action against agencies or instrumentalities of a foreign state, and such parties are

9    not entitled to immunity." (Compl. ¶ 1.) Plaintiffs only assert that the Court has

10   direct FSIA jurisdiction over the Yuzhnoye Defendants, stating: "Ukraine is a

11   foreign state, and Yuzhnoye, which is wholly owned by Ukraine, is an agency or

12   instrumentality of Ukraine." (Compl. ¶ 14.) In contrast to Yuzhnoye, RSC Energia

13   is not an agency or instrumentality of a foreign state. (Vasiliev Decl. ¶¶ 5-6; Ex.

14   1.)[13]

15        Prior to determining whether supplemental jurisdiction over RSC Energia is

16   appropriate, this Court must determine whether the Yuzhnoye defendants fall

17   within an exception to sovereign immunity. *Randolph v. Budget Rent-A-Car*, 97

18   F.3d 319 (9th Cir. 1996); *Sec. Pac. Nat'l Bank v. Derderian*, 872 F.2d 281, 284 (9th

19   Cir. 1989). Indeed, because under the FSIA, immunity is presumed, *Sec. Pac. Nat'l*

20   *Bank*, 872 F.2d at 285, "even if the foreign state does not enter an appearance to

21   assert an immunity defense, a district court still must determine that immunity is

22   unavailable under the Act." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S.

23   480, 493 n. 20 (1983).

24

25   _____

26   [13]    Plaintiffs allege, on information and belief that "the overwhelming majority
     of [RSC] Energia is directly or indirectly owned by the Russian Federation."

27   (Compl. ¶ 9.) As described above, however, this statement is factually inaccurate
     and contradicted by the fact that the Russian Federation only has a limited

28   ownership stake in RSC Energia's publicly-traded shares. (Vasiliev Decl. ¶¶ 5-6;
     Ex. 1.)

1    Assuming that this Court finds that a sovereign immunity exception applies

2    to the Yuzhnoye defendants, Plaintiffs ask this Court to exercise subject-matter

3    jurisdiction over RSC Energia on the basis of supplemental jurisdiction pursuant to

4    28 U.S.C. § 1367.  (*See* Compl. ¶ 26.)  The language of the FSIA confers federal

5    jurisdiction in "any nonjury civil action against a foreign state."  28 U.S.C. §

6    1330(a).  The Ninth Circuit has interpreted the term "action" to refer to the entire

7    lawsuit, not simply the claim against the foreign state, and in some circumstances

8    has extended federal jurisdiction over private parties joined as co-defendants in an

9    action against a foreign sovereign.  *See, e.g., Teledyne, Inc. v. Kone Corp.*, 892 F.2d

10    1404, 1409 (9th Cir. 1989); *Gould v. Aerospatiale Helicopter Corp.*, 40 F.3d 1033,

11    1034 (9th Cir. 1994).

12    This grant of supplemental jurisdiction is not unlimited, however.  The Court

13    must find that the action falls within the Article III Constitutional grant of diversity

14    jurisdiction in order to exercise supplemental jurisdiction under the FSIA.  *See*

15    *Teledyne, Inc.*, 892 F.2d at 1408 ("[T]he FSIA provides federal jurisdiction over

16    pendent parties, at least where, as here, minimal diversity exists among the adverse

17    parties."); *Rubin v. Air China Ltd.*, No. 10-CV-05110-LHK, 2011 WL 1002099, at

18    *2 (N.D. Cal. Mar. 21, 2011) (holding that the exercise of supplemental jurisdiction

19    under the FSIA is proper only "as long as the action falls within the constitutional

20    grant of diversity jurisdiction").

21    Plaintiffs will undoubtedly argue that this requirement of "constitutional

22    diversity" has been met because Plaintiffs have alleged, for instance, that Boeing is

23    a domestic corporation incorporated in Delaware and that RSC Energia is a

24    "Russian joint-stock company."  (*See* Compl. ¶¶ 6, 9.)  The diversity inquiry does

25    not end there, however.  Rather, under the constitutional diversity standard, this

26    Court has jurisdiction over "only those aspects of the dispute that are part of the

27    same 'case.'"  *Teledyne, Inc.*, 892 F.2d at 1408; *see also United Mine Workers v.*

28    *Gibbs*, 383 U.S. 715, 725 (1966).  Only claims which "derive from a common

1    nucleus of operative fact" and would ordinarily be brought together constitute a

2    single "case." *Teledyne, Inc.*, 892 F.2d at 1408.

3         Here, it cannot be said that the claims against RSC Energia derive from the

4    same common nucleus of operative fact as the claims against Yuzhnoye, the foreign

5    sovereign defendant.  RSC Energia and Yuzhnoye are defendants in this lawsuit as

6    to separate and distinct causes of action. (*See* Compl. ¶¶ 106-130.)  For instance,

7    Plaintiffs make a breach of contract claim against RSC Energia under the Energia

8    Guarantee and a breach of contract claim against Yuzhnoye under the separate and

9    distinct Yuzhnoye Guarantee. (*See id.* ¶¶ 118-130.)  Plaintiffs' own allegations

10   show that these are separate contractual agreements, representing distinct

11   obligations based on different ownership percentages in the Sea Launch Enterprise.

12   (*See, e.g., id.* ¶¶ 4, 91-102.)[14]  The facts, legal theories, and defenses asserted by

13   each defendant may vary greatly between these causes of action.

14        Courts routinely decline to exercise supplemental jurisdiction over parties

15   when the claims against them do not arise from the same common nucleus of

16   operative facts.  *See, e.g., Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 456 (11th

17   Cir. 1996); *Soliday v. Miami County, Ohio*, 55 F.3d 1158, 1165 (6th Cir. 1995);

18   *Lyon v. Whisman*, 45 F.3d 758, 763 (3d Cir. 1995).  Because Plaintiffs' claims

19   against RSC Energia could easily be asserted in a separate, independent action, this

20   Court should decline to extend supplemental jurisdiction in the current FSIA action.

### III.    CONCLUSION

22        RSC Energia respectfully requests that the Court grant this motion to (1)

23   dismiss or stay this action for *forum non conveniens* as to the claims for breach of

---

25   [14]    Likewise, although Plaintiffs make allegations against both RSC Energia and
     Yuzhnoye under the Creation Agreement, these are distinct causes of action against
26   each entity. (*See* Compl. ¶¶ 106-117.)  For instance, per the allegations in the
     Complaint, the reimbursement rates written into the Creation Agreement vary
27   greatly for RSC Energia and Yuzhnoye. (*See id.* ¶¶ 4, 111, 115.)  The difference in
     the reimbursement rates is based on the different ownership percentages in Sea
28   Launch held by RSC Energia and Yuzhnoye, giving rise to distinct factual
     circumstances for each entity. (*See id.*)

1  the Energia Guarantee, (2) stay this action under the *Colorado River* doctrine until

2  such time as the Swedish appeal is decided as to the claims for breach of the

3  Creation Agreement, and (3) dismiss this action for lack of subject-matter

4  jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  RSC Energia respectfully requests

5  any such other and further relief as this Court deems just and necessary.

6

7  DATED:  March 27, 2013                  JOHN TOWNSEND
                                          RITA M. HAEUSLER
8                                         GAURAV REDDY
                                          HUGHES HUBBARD & REED LLP
9

10                                        By: /s/ Rita M. Haeusler
11                                        ────────────────────────
                                                Rita M. Haeusler
12                                        Attorneys for Defendants S.P. Korolev
                                          Rocket and Space Corporation, Energia,
13                                        D/B/A Rocket and Space Corporation
                                          Energia After S.P. Korolev
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28