# EXHIBIT C

**CONFIDENTIAL SETTLEMENT COMMUNICATION PURSUANT TO FRE408**

**GLOBAL SETTLEMENT AGREEMENT**
<u>**AND RELEASE**</u>

This Global Settlement Agreement and Release (the "Agreement") is entered into as of this __ day of July, 2010 (the "Execution Date"), by and among:

1. Sea Launch Company, LLC, including its subsidiaries, parent companies, divisions, and affiliates (including but not limited to Sea Launch Limited Partnership (Cayman), Sea Launch ACS Limited, Sea Launch ACS Limited Partnership (Isle of Man), Platform LDC, and Platform Limited Partnership), any of their predecessors or successors, and any of their officers, directors, employees and other legal representatives (collectively, "Sea Launch" or the "Debtors");

2. The Official Committee of Unsecured Creditors of Sea Launch Company, LLC, appointed in Case No. 09-12153 (BLS), United States Bankruptcy Court for the District of Delaware (the "Committee" or the "OCUC");

3. Hughes Network Systems, LLC, including its subsidiaries (collectively, "Hughes");

4. Intelsat, LLC, including its subsidiaries (collectively, "Intelsat");

5. LightSquared (f/k/a SkyTerra, LP), including its subsidiaries (collectively, "SkyTerra");

6. SES Americom, Inc., including its subsidiaries (collectively, "SES");

7. XM Satellite Radio Inc., including its subsidiaries (collectively, "XM");

8. The Boeing Company, including its subsidiaries (collectively, "Boeing");

9. Boeing Commercial Space Company, including its subsidiaries (collectively, "BCSC");

10. Aker Maritime Finance AS, Kvaerner Sea Launch Ltd., Kvaerner US Sea Launch, Inc., and Kvaerner AS, including each of their subsidiaries and affiliates (including Kvaerner ASA and Kvaener Moss Technology) (collectively, "Aker");

11. The Debtors, the OCUC, Hughes, Intelsat, SkyTerra, SES, XM, Boeing, BCSC and Aker are collectively referred to as the "Parties." Hughes, Intelsat, SkyTerra, SES, and XM are collectively referred to as the "OCUC Members."

I.    **RECITALS**

12. BCSC owns 40% of the Debtors' equity. Aker owns 20% of the Debtors' equity.

13. On June 22, 2009 (the "Petition Date"), the Debtors filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. The Debtors' bankruptcy cases are being jointly administered (collectively, the "Bankruptcy Case") by the Honorable Brendan Shannon of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

14. Boeing, BCSC and Aker each filed proofs of claim in the Bankruptcy Case asserting, among other things, claims for trade debt ("Trade Debt Claims"), claims arising from Boeing's payoff after the Petition Date of funds borrowed by the Debtors (and guaranteed by Boeing and Aker) prior to the petition date (the "Third Party Debt Claims"), and claims arising from loans made by BCSC and Aker to the Debtors prepetition (the "Partner Loan Claims"). Collectively, the Trade Debt Claims, the Third Party Debt Claims, the Partner Loan Claims, and all other pre-petition claims asserted in the proofs of claim filed by BCSC, Boeing and Aker are referred to as the "Asserted Claims."[1]

15. Specifically, the Asserted Claims are summarized as follows:

a.    BCSC filed proofs of claim No. 93-98 in the Bankruptcy Case in the face amount of approximately $426 million relating to certain goods and services provided by BCSC to the Debtors at various points prior to the Petition Date.

---

1 The actual proofs of claim set forth the details of the claims asserted and the description contained herein does not amend or modify the Asserted Claims in any way.

       b.      Boeing filed proofs of claim No. 91-92 and 99-104 in the Bankruptcy Case representing the Third Party Debt Claims. The Third Party Debt Claims have a face amount of approximately $362.6 million and are, for the most part, Section 509 subrogation claims based on Boeing's payoff after the Petition Date of funds borrowed by the Debtors (and guaranteed by Boeing and Aker) prior to the Petition Date.

       c.      BCSC filed proofs of claim No. 90 in the Bankruptcy Case reflecting the Partner Loan Claim. BCSC's Partner Loan Claim has a face amount of $523 million and relates to a loan provided by BCSC to the Debtors in 1996, including interest accrued as of the Petition Date.

       d.      Aker filed proofs of claim No. 81-86 in the Bankruptcy Case in the amount of $39 million (Trade Debt), Third Party Debt Claims and guarantees totaling approximately $135 million, and a Partner Loan Claim in the amount of approximately $259 million (including interest accrued as of the Petition Date).

       e.      On or about May 24, 2010, Aker Maritime Finance AS transferred and assigned a portion of its Third Party Debt Claim to Kvaerner AS.

16. Subject to the reservation of rights in paragraph 23 below, this Agreement shall also address and provide for all the pre-petition, general unsecured claims that may be asserted by Boeing and/or Aker against the Debtors in the Bankruptcy Case in respect of any rejection of contractual relationship, executory contract, invoice, purchase order or other agreement arising between one or more of the Debtors and BCSC, Boeing and/or Aker, respectively, and any claim (as defined in the Bankruptcy Code) that might be asserted, filed or prosecuted by BCSC, Boeing and/or Aker against the Debtors shall be subject to the terms and conditions of this Agreement (collectively, with the

Asserted Claims, the "Claims").  This Agreement shall not address in any way the administrative or cure claims that BCSC and Boeing may have against the Debtors.

17. On October 8, 2009, the OCUC filed a motion for leave to prosecute certain causes of action on the Debtors' behalf against BCSC and Boeing (the "Motion").  The Debtors and Boeing and BCSC objected to the Motion, which has been continued from time to time.  In February 2010, the OCUC informed the Bankruptcy Court that it would be amending the Motion to also seek affirmative relief in the amount of $40 million against BCSC and Boeing (the "Amended Motion").

18. On March 3, 2010, the OCUC filed an objection to the Asserted Claims (the "Objection").  The Bankruptcy Court ordered the Parties to mediate and, on April 9, 2010, the Parties participated in a mediation with the Honorable Ralph Mabey (the "Mediation"), and entered into a term sheet (attached as Exhibit A), certain terms of which are incorporated into this Agreement.

19. On June 21, 2010, the Debtors filed their Second Amended Joint Plan of Reorganization (as amended, the "Plan of Reorganization") and the related second amended disclosure statement (the "Disclosure Statement").  On June 21, 2010, the Court entered an order approving the Disclosure Statement and authorizing the Debtors to begin soliciting acceptances of the Plan of Reorganization on June 28, 2010.

## II.   SETTLEMENT TERMS AND CONDITIONS

20. The recitals set forth above are incorporated herein by reference and are made a part of this Agreement.  In exchange for good and valuable consideration, the amount and sufficiency of which are acknowledged by each Party, subject to the occurrence of the Effective Date (as defined in the Plan of Reorganization), each Party agrees to the terms of this Agreement, which are as follows.

**A.      Allowance of Claims**

21. Each of the Claims will be allowed, unsecured, pre-petition claims against the Debtors in the Bankruptcy Case in the full amount stated on the face of each of the Claims.  The OCUC will withdraw the Motion, the Amended Motion, and the Objection, with prejudice.

**B.      Treatment of Claims**

22. Subject to the reservation of rights in paragraph 23 below, Boeing, BCSC, and Aker hereby agree that, in full and complete satisfaction and discharge of the Claims against the Debtors, they shall receive Creditor Trust Equity Interests in the Creditor Trust under the Plan of Reorganization, which Creditor Trust shall receive common stock of reorganized Sea Launch which, collectively, shall not constitute more than 5% of the outstanding common stock of reorganized Sea Launch.  Boeing, BCSC and Aker will instruct the Debtors in writing on how to divide the Creditor Trust Equity Interests among Boeing, BCSC and Aker prior to the Effective Date, provided, however, that failure to provide such instructions will in no way delay confirmation of the Plan of Reorganization or the occurrence of the  Effective Date.  Once this Agreement is approved pursuant to paragraph 36 below, Boeing, BCSC and Aker will withdraw any objections to the Plan of Reorganization (except to the extent the Plan of Reorganization is inconsistent with this Agreement) and will advocate to the Bankruptcy Court that the Plan of Reorganization should be confirmed.

**C.      Reservations of Rights**

23. Boeing, BCSC, and Aker do not waive and expressly preserve their rights to pursue the other Sea Launch partners—S.P. Korolev Rocket & Space Company, Energia, KB Yuzhnoye, and PO Yuzhnoye Mashinostroitelny Zavod, along with any of their affiliates—for 40% of the third party debt and 40% of the partner loans.  Nothing in this Agreement, and nothing in any plan of reorganization filed by the Debtors or the OCUC, will affect Boeing, BCSC, or Aker's rights to

5

pursue the other Sea Launch partners or any affiliates with respect to the third party debt and partner loans.

24. Nothing in this Agreement shall affect or impair the OCUC's right to object to the Plan of Reorganization or any other chapter 11 plan filed in the Bankruptcy Case.

### D.    Payment

25. Boeing and Aker will jointly pay within 30 days of the Execution Date all of the Mediator's fees and expenses incurred in connection with the Mediation.

### E.    Releases

26. Subject to Paragraph 36 below, the Debtors hereby release and forever discharge Boeing, BCSC, and Aker from any and all manner of claims, disputes, actions, liabilities, causes of actions, suits, set-offs, counterclaims, demands, and damages whatsoever, based on any legal or equitable theory, right of action or otherwise (whether arising under federal, state or local law or regulation or common law), foreseen or unforeseen, known or unknown, matured or unmatured, accrued or not accrued.  Without limiting the generality of the foregoing, this release expressly includes **any** claims against Boeing, BCSC, and/or Aker regardless of subject matter, including but not limited to those based on contract, tort, any payments made by the Debtors to Boeing, BCSC, and/or Aker, or by Boeing, BCSC, and/or Aker to the Debtors, statements made by Boeing, BCSC, and/or Aker to any third party, and the use of the corporate form (including but not limited to alter ego claims, piercing the corporate veil claims, misuse of the corporate form, claims that Boeing, BCSC, and/or Aker was an instrumentality of or a single economic unit with the Debtors, or any other claim based on an agency theory).

27. The OCUC hereby releases and forever discharges Boeing, BCSC, and Aker from any and all manner of claims, disputes, actions, liabilities, causes of actions, suits, set-offs,

counterclaims, demands, and damages whatsoever, based on any legal or equitable theory, right of action or otherwise (whether arising under federal, state or local law or regulation or common law), foreseen or unforeseen, known or unknown, matured or unmatured, accrued or not accrued.  Without limiting the generality of the foregoing, this release expressly includes **any** claims against Boeing, BCSC, and/or Aker, regardless of subject matter, including but not limited to those based on contract, tort, any payments made by the Debtors to Boeing, BCSC, and/or Aker, or by Boeing, BCSC, and/or Aker to the Debtors, statements made by Boeing, BCSC, and/or Aker to any third party, and the use of the corporate form (including but not limited to alter ego claims, piercing the corporate veil claims, misuse of the corporate form, claims that Boeing, BCSC, and/or Aker was an instrumentality of or a single economic unit with the Debtors, or any other claim based on an agency theory).

28. Hughes hereby releases and forever discharges Boeing, BCSC, and Aker from any and all manner of claims, disputes, actions, liabilities, causes of actions, suits, set-offs, counterclaims, demands, and damages whatsoever, based on any legal or equitable theory, right of action or otherwise (whether arising under federal, state or local law or regulation or common law), foreseen or unforeseen, known or unknown, matured or unmatured, accrued or not accrued, if the subject matter of the claim has any relationship to Sea Launch.  Without limiting the generality of the foregoing, this release expressly includes **any** claims against Boeing, BCSC, and/or Aker that has **any** relationship to Sea Launch, including but not limited to those based on contract, tort, any payments made by the Debtors to Boeing, BCSC, and/or Aker, or by Boeing, BCSC, and/or Aker to the Debtors, statements made by Boeing, BCSC, and/or Aker to any third party, and the use of the corporate form (including but not limited to alter ego claims, piercing the corporate veil claims,

misuse of the corporate form claims, claims that Boeing, BCSC, and/or Aker was an instrumentality of or a single economic unit with the Debtors, and any other claim based on an agency theory).

29. SkyTerra hereby releases and forever discharges Boeing, BCSC, and Aker from any and all manner of claims, disputes, actions, liabilities, causes of actions, suits, set-offs, counterclaims, demands, and damages whatsoever, based on any legal or equitable theory, right of action or otherwise (whether arising under federal, state or local law or regulation or common law), foreseen or unforeseen, known or unknown, matured or unmatured, accrued or not accrued, if the subject matter of the claim has any relationship to Sea Launch. Without limiting the generality of the foregoing, this release expressly includes **any** claims against Boeing, BCSC, and/or Aker that has **any** relationship to Sea Launch, including but not limited to those based on contract, tort, any payments made by the Debtors to Boeing, BCSC, and/or Aker, or by Boeing, BCSC, and/or Aker to the Debtors, statements made by Boeing, BCSC, and/or Aker to any third party, and the use of the corporate form (including but not limited to alter ego claims, piercing the corporate veil claims, misuse of the corporate form claims, claims that Boeing, BCSC, and/or Aker was an instrumentality of or a single economic unit with the Debtors, and any other claim based on an agency theory).

30. Intelsat hereby releases and forever discharges Boeing, BCSC, and Aker from any and all manner of claims, disputes, actions, liabilities, causes of actions, suits, set-offs, counterclaims, demands, and damages whatsoever, based on any legal or equitable theory, right of action or otherwise (whether arising under federal, state or local law or regulation or common law), foreseen or unforeseen, known or unknown, matured or unmatured, accrued or not accrued, if the subject matter of the claim has any relationship to Sea Launch. Without limiting the generality of the foregoing, this release expressly includes **any** claims against Boeing, BCSC, and/or Aker that has **any** relationship to Sea Launch, including but not limited to those based on contract, tort, any

payments made by the Debtors to Boeing, BCSC, and/or Aker, or by Boeing, BCSC, and/or Aker to the Debtors, statements made by Boeing, BCSC, and/or Aker to any third party, and the use of the corporate form (including but not limited to alter ego claims, piercing the corporate veil claims, misuse of the corporate form claims, claims that Boeing, BCSC, and/or Aker was an instrumentality of or a single economic unit with the Debtors, and any other claim based on an agency theory).

31. SES hereby releases and forever discharges Boeing, BCSC, and Aker from any and all manner of claims, disputes, actions, liabilities, causes of actions, suits, set-offs, counterclaims, demands, and damages whatsoever, based on any legal or equitable theory, right of action or otherwise (whether arising under federal, state or local law or regulation or common law), foreseen or unforeseen, known or unknown, matured or unmatured, accrued or not accrued, if the subject matter of the claim has any relationship to Sea Launch.  Without limiting the generality of the foregoing, this release expressly includes **any** claims against Boeing, BCSC, and/or Aker that has **any** relationship to Sea Launch, including but not limited to those based on contract, tort, any payments made by the Debtors to Boeing, BCSC, and/or Aker, or by Boeing, BCSC, and/or Aker to the Debtors, statements made by Boeing, BCSC, and/or Aker to any third party, and the use of the corporate form (including but not limited to alter ego claims, piercing the corporate veil claims, misuse of the corporate form claims, claims that Boeing, BCSC, and/or Aker was an instrumentality of or a single economic unit with the Debtors, and any other claim based on an agency theory).

32. XM hereby releases and forever discharges Boeing, BCSC, and Aker from any and all manner of claims, disputes, actions, liabilities, causes of actions, suits, set-offs, counterclaims, demands, and damages whatsoever, based on any legal or equitable theory, right of action or otherwise (whether arising under federal, state or local law or regulation or common law), foreseen or unforeseen, known or unknown, matured or unmatured, accrued or not accrued, if the subject

matter of the claim has any relationship to Sea Launch. Without limiting the generality of the foregoing, this release expressly includes **any** claims against Boeing, BCSC, and/or Aker that has **any** relationship to Sea Launch, including but not limited to those based on contract, tort, any payments made by the Debtors to Boeing, BCSC, and/or Aker, or by Boeing, BCSC, and/or Aker to the Debtors, statements made by Boeing, BCSC, and/or Aker to any third party, and the use of the corporate form (including but not limited to alter ego claims, piercing the corporate veil claims, misuse of the corporate form claims, claims that Boeing, BCSC, and/or Aker was an instrumentality of or a single economic unit with the Debtors, and any other claim based on an agency theory).

33. Boeing, BCSC, and Aker hereby release and forever discharge each OCUC Member, in their individual capacities and/or as members of the OCUC, from any and all manner of claims, disputes, actions, liabilities, causes of actions, suits, set-offs, counterclaims, demands, and damages whatsoever, based on any legal or equitable theory, right of action or otherwise (whether arising under federal, state or local law or regulation or common law), foreseen or unforeseen, known or unknown, matured or unmatured, accrued or not accrued, if the subject matter of the claim has any relationship to Sea Launch. Without limiting the generality of the foregoing, this release expressly includes **any** claims against OCUC Members, in their individual capacities and/or as members of the OCUC, that has **any** relationship to Sea Launch, including but not limited to those based on contract and tort (including but not limited to any claim based on an agency theory).

34. Boeing, BCSC, and Aker hereby release and forever discharge the OCUC from any and all manner of claims, disputes, actions, liabilities, causes of actions, suits, set-offs, counterclaims, demands, and damages whatsoever, based on any legal or equitable theory, right of action or otherwise (whether arising under federal, state or local law or regulation or common law), foreseen or unforeseen, known or unknown, matured or unmatured, accrued or not accrued. Without limiting

10

the generality of the foregoing, this release expressly includes **any** claims against the OCUC, regardless of subject matter, including but not limited to those based on contract and tort (including but not limited to any claim based on an agency theory).

### F.    Other Provisions

35. Boeing, BCSC, Aker, and the Debtors represent and warrant that none of the individual OCUC Members has received consideration from Boeing or Aker for entering into this Agreement that is outside the terms of this Agreement.

36. This Agreement is subject to the approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019.  Within 24 hours of the Execution Date, the Debtors will file a motion with the Bankruptcy Court for approval of this Agreement, and all Parties will support the Debtors' motion for approval.  The Debtors will ask the Bankruptcy Court to hear the 9019 motion on the day of the confirmation hearing so that paragraph 22 above can be effectuated, and all Parties will support the Debtors' request.

37. BCSC and the Debtors are parties to the following agreements, which have neither expired, been terminated, or been rejected or assumed as of the Execution Date:  the Basic Ordering Agreement for Sea Launch Production Hardware (SLC-B-421-98); two support services agreements (No. 010096 and USSL-SUPPORT SERVICES); and a Loan of Personnel Agreement (BCSC-SLC-LOP-05-01) (collectively, the "Active Agreements").  The Debtors retain the right to assume or reject the Active Agreements pursuant to 11 U.S.C. § 365.  Notwithstanding anything to the contrary herein, the release provided in paragraph 26 above applies to any breaches of the Active Agreements by BCSC that may have occurred prior to the Effective Date, but does not apply to any breaches of the Active Agreements by BCSC that may have occurred after the Effective Date.  Moreover, any pre-petition unsecured claim (as defined in the Bankruptcy Code) that may be asserted by Boeing,

BCSC, or Aker against the Debtors in connection with any rejection of any applicable executory contracts shall be treated in the same manner provided for herein for the Asserted Claims and shall receive a distribution, if any, pursuant to any such pre-petition, unsecured claim, if any, pursuant to the terms of this Agreement and the Order approving this Agreement.

38. This Agreement does not address, resolve, or in any way affect any administrative claims that BCSC and/or Boeing may have against the Debtors.  The Debtors will remain obligated to pay any administrative claim that is valid and owing to BCSC and/or Boeing and allowed by the Bankruptcy Court.

39. Boeing, BCSC and Aker will not object, or join or support any objection, to the professional fees or expenses of the OCUC and the Debtors in the Bankruptcy Case.

40. This Agreement constitutes the entire, complete and integrated statement of each and every term and provision agreed to by and among the Parties and is not subject to any condition not provided for herein.  This Agreement supersedes any prior representations, promises, or warranties (oral or otherwise) made by any Party, and no Party shall be liable or bound to any other Party for any prior representation, promise or warranty (oral or otherwise) except for those expressly set forth in this Agreement.  This Agreement shall not be modified in any respect except by a writing executed by the Party to be charged hereto.

41. The Parties agree that this Agreement has been negotiated at arms length by parties of equal bargaining power.  None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

42. Each Party warrants and represents that in entering into this Agreement it is relying solely on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has

retained to represent it in this matter.  No Party is relying on any representation or statement made by any other Party or any person representing such other Party except for the representations and warranties expressly set forth in this Agreement.

43. The Parties expressly declare and represent that they have read this Agreement and that they have had the opportunity to consult counsel regarding the meaning of the terms and conditions contained herein.  The Parties further expressly declare and represent that they fully understand the content and effect of this Agreement, that they approve and accept the terms and conditions contained herein, and that they enter into this Agreement willingly, knowingly, and without compulsion.

44. Each of the Parties further declares and represents that it has all requisite corporate, partnership, limited liability company or similar authority to enter into this Agreement and carry out the transactions contemplated hereby and perform its obligations contemplated hereunder; and the execution and delivery of this Agreement and the performance of such Party's obligations hereunder have been duly authorized by all necessary corporate, limited liability company, partnership or other similar action on its part.

45. Each of the signatories hereto declares and represents that he or she is competent to execute this instrument and that he or she is duly authorized, and has the full right and authority, to execute this Agreement on behalf of the Party for whom he or she is signing.

46. This Agreement may be executed in counterparts.  Facsimile signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Agreement.

47. This Agreement, including, without limitation, the releases contained in this Agreement, shall be null and void in the event that (i) the Plan of Reorganization is not amended, or the order

confirming the Plan of Reorganization (the "Confirmation Order") does not contain provisions amending the Plan of Reorganization, so as to add condition precedents to the Effective Date of the Plan of Reorganization that are incapable of being waived by any party and that require (x) that the Settlement Agreement between Hughes Network Systems, LLC, on the one hand, and Sea Launch Limited Partnership and Sea Launch Company, L.L.C., on the other hand, dated May 27, 2010, be in full force and effect under the terms thereof and (y) that this Agreement be in full force and effect under the terms hereof, (ii) the amendments described in subpart (i) hereof are invalidated as a result of any appeal of the Confirmation Order, and/or (iii) any of the conditions precedent to the Effective Date of the Plan of Reorganization, including the condition precedents described in subpart (i) hereof, have not occurred, cannot occur and/or are not satisfied (or waived, to the extent waivable, by the parties capable of waiving such conditions as set forth in the Plan of Reorganization).

48. This Agreement shall be interpreted in accordance with the laws of Delaware, without giving effect to any choice-of-law or conflict of laws provisions.  Any lawsuit related to the terms of this Agreement shall be brought exclusively in the Bankruptcy Court.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, this Agreement has been executed by the undersigned as
of the date shown above.

_____
Christopher Picone
Chief Restructuring Officer
For the Debtors


_____
For the OCUC


_____
For Hughes


_____
For Intelsat


_____
For SkyTerra


_____
For SES


_____
For XM

15

IN WITNESS WHEREOF, this Agreement has been executed by the undersigned as of the date shown above.

_____
Christopher Picone
Chief Restructuring Officer
For the Debtors

For the OCUC

_____

For Hughes

_____

For Intelsat

_____

For SkyTerra

_____

For SES

_____

For XM

15

IN WITNESS WHEREOF, this Agreement has been executed by the undersigned as of the date shown above.

_____
Christopher Picone
Chief Restructuring Officer
For the Debtors


_____

For the OCUC


_____

For Hughes


_____

For Intelsat


_____

For SkyTerra


_____

For SES


_____

For XM

15

IN WITNESS WHEREOF, this Agreement has been executed by the undersigned as
of the date shown above.

_____
Christopher Picone
Chief Restructuring Officer
For the Debtors


_____

For the OCUC


_____

For Hughes


_____

For Intelsat


_____

For SkyTerra


_____

For SES


_____

For XM

15

IN WITNESS WHEREOF, this Agreement has been executed by the undersigned as of the date shown above.

_____
Christopher Picone
Chief Restructuring Officer
For the Debtors


_____
For the OCUC


_____
For Hughes


_____
For Intelsat


_____
For SkyTerra


_____
For SES


_____
For XM

15

IN WITNESS WHEREOF, this Agreement has been executed by the undersigned as of the date shown above.

_____
Christopher Picone
Chief Restructuring Officer
For the Debtors


_____
For the OCUC


_____
For Hughes


_____
For Intelsat


_____
For SkyTerra


_____
For SES
Robert J. Kisilywicz
Senior Vice President, CFO

15

IN WITNESS WHEREOF, this Agreement has been executed by the undersigned as of the date shown above.

_____
Christopher Picone
Chief Restructuring Officer
For the Debtors


_____
For the OCUC


_____
For Hughes


_____
For Intelsat


_____
For SkyTerra


_____
For SES


_____
For XM

15

_Chad Husnick, Kirkland & Ellis LLP_

Attorneys For Boeing

_Chad Husnick, Kirkland & Ellis LLP_

Attorneys For BCSC

_____

For Aker

16

_____

For Boeing


_____

For BCSC


_Bonnie Fattal_

For Aker

16